## G. W. McNear, Inc. *vs.* American & British Mfg. Company.

### JANUARY 6, 1922.

Present:  Sweetland, C. J., Vincent, Stearns, and Rathbun, JJ.

*(1)  Contracts.  Guaranties.*

Where one party to a contract waived the furnishing of guaranties of its performance by the other party, the latter cannot as a defence to an action by the former for its breach, set up such waiver by the plaintiff, where the plaintiff accepted the agreement without guaranties and acted in reliance upon the defendant's sole undertaking.

*(2)  Evidence.  Conversation by Telephone.*

The action of the court in admitting and rejecting testimony as to telephonic conversations, dependent upon the evidence of the identity of the party at the other end of the wire was proper.

*(3)  Evidence.  Reversible Error.*

The action of the court in excluding evidence should not be regarded as reversible error, where the court permitted such excluded statements appearing in a subsequent portion of the deposition to be presented to the jury.

*(4)  Conspiracy to Create Monoply.  Evidence.*

Where the admitted purpose of defendant was to obtain a monopoly of a commodity with the object of selling it at an artificially advanced and unreasonable price, and the sole controversy between the parties was whether the plaintiff acting through its agent knew of the ulterior purpose of the defendant and illegally combined with it to carry out such purpose or whether the plaintiff was merely pursuing its ordinary business as a commission broker without participation in the design of defendant, evidence offered by defend-

ant as to acts and statements of its agent in corroboration of the admitted designs of the agent and the defendant, but in no way tending to support defendant's contention of an illegal combination with the plaintiff to further such designs, was irrelevant and inadmissible.

### (5) *Conspiracy to Create Monoply. Evidence.*

Upon the issue of a conspiracy to create a monopoly, the determination as to the admissibility of evidence as to the acts and declarations of one of the parties rested in the discretion of the court. If there was evidence in the case from which a jury might possibly draw the inference that a conspiracy existed between the parties the court would be obliged to submit the question to the jury even though such inference would not be drawn by him and although he might feel that a verdict finding a conspiracy would be against the preponderance of the evidence and should be set aside, and in the state of the proof in the case at bar the justice could properly exercise his discretion and exclude evidence as to the acts and declarations of one of the parties although he felt constrained to submit the question of conspiracy to the jury.

### (6) *Evidence. Cross Examination.*

It is within the discretion of the court to regulate and restrain cross examination designed to test or discredit the sincerity of a witness.

### (7) *Contracts. Anticipatory Breach. Damages.*

Plaintiff obligated himself to receive from X. and to pay him for forty flasks of quicksilver per month for six months. Plaintiff assigned the contract to defendant but there was no novation and plaintiff continued bound upon his contract. Defendant was in default and repudiated its obligation under the agreement of assignment. *Held*, that plaintiff was entitled to treat such renunciation as a breach of the entire agreement and to commence his action before the termination of the period within which the full deliveries were to be made.

*Held*, further, that in measuring the plaintiff's damages the jury should consider not only his loss upon the amount of the quicksilver which he was obliged to receive before the defendant's breach of the contract and before the commencement of the action but also his loss in respect to the quicksilver delivered under the contract subsequent to the date of the writ.

*Held*, further, that it appearing that the commodity had no value to the plaintiff for its own use and that to reduce the amount of its loss and to mitigate the damages the plaintiff had with due diligence and after proper notice sold the quicksilver from time to time at auction, evidence as to the amounts received at such sales was admissible to assist in fixing the plaintiff's damages.

### (8) *Contracts. Principal and Agent. New Trial.*

The court would not be warranted in setting aside a verdict because of refusal of the trial court to submit to the jury the question whether defendant's agent against instructions delivered the defendant's executed agreement to the plaintiff, where the overwhelming preponderance of the evidence was against the fact that plaintiff had knowledge of the instructions at the time of the delivery to him of the agreement and where at the time of delivery

defendant's agent also furnished plaintiff with a certified copy of a resolution of defendant's directors authorizing the chairman of the board to sign the contract.

*(9)    Special Findings.*

Gen. Laws 1909, cap. 291, § 6, relative to the submission of special findings to the jury, relates to the submission of questions involving some material issue in a case and not to what is merely a controverted point in evidence.

*(10)    Special Findings.*

The material issue in a case was whether the plaintiff and defendant had combined to obtain a monopoly with the unlawful intent of selling a commodity at an unreasonably high price; requests for special findings as to whether defendant's agent was endeavoring to get control of a sufficient quantity of the commodity to enable him to raise the price and whether plaintiff's agent was working with the defendant's agent to this end; were refused:—The jury were instructed that both parties were bound by the acts purposes intent and knowledge of their agents.

*Held,* that the moving party was not prejudiced for the issue stated was the particular matter in controversy and was clearly explained in the charge and the question must have been intentionally answered in the general verdict.

*(11)    Trial.    Misconduct of Counsel.    Exceptions.*

A bill of exceptions may not include objections to the conduct of counsel in the trial of a case, except where the party has asked the court for appropriate action which has been denied when by exception to such denial of relief he may bring the ruling up for review.

Assumpsit.    Heard on exceptions of defendant and overruled.

Sweetland, C. J.    This is an action of the case in assumpsit to recover damages for the alleged breach by the defendant of two written agreements.

The case was tried in the Superior Court before Mr. Justice Brown sitting with a jury and resulted in a verdict for the plaintiff in the sum of $138,422.63.    The defendant duly filed its motion for a new trial which was denied by said justice.    The case is before us upon the defendant's exception to the decision denying its motion for new trial, and upon the following exceptions taken by the defendant in the course of the trial upon which it now relies.

The case has been in this court before upon a bill of exceptions following a previous trial in the Superior Court

and in our opinion filed at that time the essential facts are set forth (42 R. I. 302). The evidence in the trial now in review is substantially the same as that presented at the previous trial. By reference to the transcript the following facts appear. Quicksilver, used in making fulminate of mercury, is an essential ingredient in the manufacture of ammunition employed in modern warfare. During the World War there was a shortage of that substance. In 1916 the plaintiff, doing business in California, as agent of the defendant, entered into two written contracts with one Murray Innes for the purchase of a large quantity of quicksilver; and in its own name the plaintiff became bound for the performance of said contracts. By two written agreements, purporting to be of even date respectively with said contracts between the plaintiff and Innes, the plaintiff assigned said contracts to the defendant, which assumed all the obligations therein imposed upon the plaintiff. Said Murray Innes however did not assent to these assignments and in no way released the plaintiff from its obligations under the contracts with him. When, in accordance with his undertaking, Innes delivered said quicksilver to the plaintiff the defendant refused to accept or pay for it or any part of it. The plaintiff was then obliged to pay for the quicksilver in accordance with the terms of its contracts with Innes and then sold the same at public auction, upon a falling market, at a loss. That loss with interest the plaintiff in this suit is seeking to recover as damages for the defendant's breach of its agreements to assume the plaintiff's obligations under its contracts with Innes.

At the conclusion of the evidence the defendant moved that the justice direct a verdict in its favor for the reason that in the state of the evidence upon the issues raised by three of its defences it was entitled to a verdict as a matter of law. The first of these defences was that the agreements in suit were not binding upon the defendant because it had failed to furnish to the plaintiff a written guaranty of its performance of its agreements. The second was that the

plaintiff had not acted in good faith toward the defendant in its dealings with said Innes leading up to said contracts and the agreements in suit. The third was that the agreements were invalid because in furtherance of a conspiracy between the plaintiff and defendant. The justice denied defendant's motion for the direction of a verdict and the defendant excepted to such action of the justice. This (1) exception should be overruled. There is no merit in the defendant's claim that it was not bound by said agreements because it did not procure guarantors in writing of the defendant's due performance of its obligations under the agreements. Upon the face of these agreements the obligations of the parties are in no degree conditioned upon the furnishing of such guarantors. Such guarantors if furnished would be solely for the benefit and security of the plaintiff and if the plaintiff waived such a condition in its favor, accepted the agreements without guarantors and acted in reliance upon the defendant's sole undertaking the defendant can not now be permitted to escape liability because of such waivers on the part of the plaintiff. The contention of the defendant is that the plaintiff should not be permitted to recover in this action because of its lack of good faith towards the defendant in the transactions which it carried on as the defendant's agent. Particularly it is claimed that in making the contracts in its own name for the purchase of the quicksilver in question it received from Innes a concession or rebate from the price named in the contracts. In our former opinion we held that in the record of the previous trial the claim of bad faith was unsupported, because by the uncontradicted evidence full disclosure regarding such rebates was made by the plaintiff's agent to the defendant's agent and acquiesced in by him before said contracts and the assignments of them to the defendant were made. At the last trial the testimony of the plaintiff in regard to such disclosure was contradicted by the testimony of Joseph H. Hoadley. It thus became a question properly to be submitted to the jury as to whether such disclosure was

made to the defendant before it entered into the agreements in suit.   The main issue before the jury was as to whether the agreements sued upon were made pursuant to a conspiracy on the part of the plaintiff and the defendant to obtain a monopoly of quicksilver for the purpose of selling it at an artificially advanced and unreasonably high price in violation of the common law, the statutes of California, in which state the contracts were to be performed, and the act of Congress known as the Sherman Act.   If such conspiracy existed the agreements upon which the plaintiff now seeks to hold the defendant in this suit clearly were made in furtherance of it and are not enforceable.   The facts and circumstances in evidence relating to the dealings between the parties bearing upon the issue of conspiracy were properly submitted to the jury.   Upon that evidence a finding would be warranted that the plaintiff was ignorant of any illegal purpose on the part of the defendant or its agent and that the plaintiff in good faith acted as agent for the defendant who, it believed, had a legitimate purpose in desiring to purchase the quicksilver in question.

After a verdict in favor of the plaintiff upon these issues we will not overrule the decision of said justice refusing to set such verdict aside.

The defendant offered the testimony of certain witnesses as to statements which they had heard the defendant's agent, Joseph H. Hoadley, make in the course of what the defendant claims were telephonic conversations between said Hoadley in New York and John W. McNear in San Francisco.   The justice allowed such testimony to be introduced in each instance where there appeared to him to be sufficient evidence of the identity of John W. McNear as the other party to the conversation, and excluded the testimony in the absence of such evidence.   The defendant excepted to the court's rulings excluding the testimony.   These exceptions are not well taken.   The distinction made by said justice regarding the admissibility of evidence as to statements purporting to be made in conversations through the

medium of the telephone was without error, and his ruling as to the insufficiency of the evidence to establish the identity of John W. McNear as the other party to such alleged conversation was justified in each instance.

In the deposition of the witness Young the justice permitted the introduction of testimony as to certain statements which the witness heard Joseph H. Hoadley make in a telephonic conversation with John W. McNear and excluded testimony as to other statements which the witness said "impressed me in the conversation." Said justice excluded the latter testimony on the ground that the witness was testifying as to impressions rather than to his memory, and the defendant excepted. From an examination of the context it appears that the witness was endeavoring to (3) indicate that the statements of Hoadley which the justice excluded were particularly impressed upon his memory. However the ruling of said justice in this matter, if erroneous, should not be regarded as constituting reversible error because said justice permitted such excluded statements, appearing in a subsequent portion of the deposition to be presented to the jury.

A large number of the defendant's exceptions are to rulings of said justice excluding the testimony of various witnesses as to acts done and declarations made by Joseph H. Hoadley in New York in regard to the sale of quicksilver in 1916, as to his purpose to secure a monopoly in quicksilver at that time, and as to his expectation of great profit from such monopoly. None of this proffered testimony related to matters in which any agent of the plaintiff participated or at which he was present. The contention of the defendant is that as it had presented sufficient evidence to require the submission to the jury of the issue of conspiracy between the parties, it must be held that the defendant had presented *prima facie* evidence of such illegal combination, and thereafter every act and declaration of each conspirator in pursuance of the concerted plan should be regarded in (4) law as the act and declaration of both and as furnishing

original evidence against each of them.  (*Dodge v. Goodell,* 16 R. I. 48).  That generally recognized principle of law is without application here.  This case is distinguished from one in which a third party seeks to fix upon two or more alleged conspirators liability for an illegal combination. It is then incumbent upon such third party to establish both the combination and its illegal purpose, and having first shown a concert of design and action between the alleged conspirators he may then show, as against them all, the illegal purpose of such combination by showing the acts and the statements of each in furtherance of the combination, and may hold each responsible for the acts of the others.  In the case at bar there is no question but that the plaintiff acting through its agent, John W. McNear, undertook to secure for the defendant, acting through its agent Joseph H. Hoadley, a large part of the quicksilver production in the state of California for the year 1916. There can be no question that the purpose of Joseph H. Hoadley, acting for the defendant, was to obtain a monopoly of quicksilver for the purpose of reselling at an artificially advanced and unreasonably high price.  The main issue and practically the sole controversy between the parties in the case is as to whether the plaintiff acting through its agent knew of the ulterior purpose of the defendant and illegally combined with it to carry out such purpose, or whether the plaintiff, as it claims, was in this matter merely pursuing its ordinary business as a commission broker and was endeavoring to secure quicksilver for its principal, the defendant, entirely without participation in the design of the defendant and without knowledge that it desired to secure said quicksilver for other than a legitimate purpose. The evidence which the defendant sought to introduce with regard to the acts and statements of Hoadley in New York was in corroboration of the admitted designs of Hoadley and the defendant, but in no way tended to support the defendant's contention of an illegal combination with the plaintiff. in California to further such designs and to share in their

anticipated profits. Such testimony was irrelevant and inadmissible. The occasional reference to John W. McNear and the plaintiff contained in the declarations of Hoadley, which the defendant sought to introduce, with one exception are entirely consistent with the plaintiff's contention that it was acting as the agent of the defendant without knowledge of the defendant's purpose. The sole reference to a combination contained in the defendant's offers of proof of the declaration of Hoadley is in its offer of proof through the deposition of the witness Young that Hoadley in the course of a conversation with Young said with reference to McNear that "they would divide fifty fifty." This declaration of Hoadley would be inadmissible under the rule of evidence which the defendant invokes for it could not be considered as made in furtherance of the common design of the plaintiff and defendant, if one had been established, nor as part of the *res gestae* of any act done in furtherance of such design. In the circumstances of the case, as presented by the evidence in the transcript, a finding that the plaintiff combined with the defendant in its design to create a monopoly in quicksilver, if warranted at all, must be based upon the evidence as to the transactions and communications between the parties acting through their agents and upon the reasonable inferences to be drawn therefrom, and in no degree would a finding of conspiracy be supported by any amount of evidence as to the acts and declaration of the defendant's agent in New York of which the plaintiff was ignorant. Furthermore, we are of the opinion that in any view as to the bearing of the acts and declarations of Hoadley upon the main issue the determination as to the admissibility of evidence as to such acts and declarations rested in the discretion of the justice. If there was evidence in the case from which a jury might possibly draw the inference that a conspiracy existed between the parties the justice under our practice would be obliged to submit the question to the jury, even though such inference would not be drawn by him, and although he might feel that a verdict finding a

conspiracy would be against the preponderance of the evidence and should be set aside by him. We are of the opinion that in the state of the proof said justice might properly exercise his discretion and exclude this testimony although under our practice he felt constrained to submit the question of conspiracy to the determination of the jury.

The defendant's exceptions taken to rulings of the court excluding certain questions propounded to the plaintiff's witness McNear in cross examination are not sustained. (6) These questions do not have a direct bearing upon any issue in the case. Their purpose is to test or to discredit the sincerity of the witness. Some appear to have been asked in irony. In excluding these questions the justice did not abuse his discretion to regulate and restrain cross examination of this character.

The defendant excepted to the rulings of said justice admitting evidence as to the amounts received by the plaintiff at sales of quicksilver delivered to it by Innes under said contracts subsequent to the defendant's breach of its agreements with the plaintiff. This evidence was admitted for the purpose of measuring the plaintiff's damages. The evidence in the case warranted a finding that the plaintiff entered into the two contracts with Innes merely as agent of the defendant and for the defendant's benefit. By the first of these contracts the plaintiff obligated itself to receive from Innes and to pay him for forty flasks of quicksilver per month for six months from February (7) 1916. By the second contract the plaintiff obligated itself to purchase a stipulated portion of the full product of the "Oceanic Quicksilver Mine" for six months from February 9, 1916, which portion of the production of said mine was estimated as from seventy-five to eighty flasks per month. The plaintiff assigned these contracts to the defendant but there was no novation, and the plaintiff continued bound upon its contracts with Innes. By its default and by its statements to the plaintiff the defendant clearly repudiated its obligations under said agreements of assign-

ment. By the weight of authority in this country and in England the plaintiff was then entitled, if it saw fit, to treat such renunciation on the defendant's part as a breach of the entire agreements, and to commence this action on June 6, 1916, before the termination of the period within which the full deliveries of quicksilver were to be made. If the jury found that the defendant was liable, in measuring the amount of the plaintiff's damages the jury should consider not only the plaintiff's loss upon the quicksilver which it was obliged to receive before the defendant's breach of said contracts and before the commencement of this suit, but also the plaintiff's loss in respect to quicksilver delivered under said contracts subsequent to the date of the writ. The plaintiff was not a dealer in quicksilver in the ordinary sense, and the defendant was not a purchaser from the plaintiff. Quicksilver was a commodity which had no value to the plaintiff for its own use. To reduce the amount of its loss and to mitigate the damages to be assessed against the defendant the plaintiff, with due diligence and after proper notice, sold the quicksilver from time to time at public auction. The defendant's exceptions to the admission of evidence as to the amounts received at such sales, to assist in fixing the plaintiff's damages, are without merit. Such evidence is in effect in mitigation of damages. In the leading case of *Hochster v. De la Tour*, 2 El. & Bl. 678, Lord Campbell said in regard to the measure of damages in a suit brought before the time fixed for the termination of an executory contract on account of an anticipatory breach of such contract, "the jury in assessing the damages would be justified in looking to all that had happened or was likely to happen to increase or mitigate the loss of the plaintiff down to the day of trial." In *Frost v. Knight*, L. R. 7 Ex. 111, the court said with reference to damages for the anticipatory breach of a contract to be performed at a future time, that the plaintiff "will be entitled to such damages as would have arisen from the nonperformance of the contract at the appointed time subject however to

abatement in respect of any circumstances which may have afforded him the means of mitigating his loss." *Roehm v. Horst*, 178 U. S. 1, was an action to recover damages for the breach of four executory contracts. At the date of the action the time to commence performance of the first contract had arrived and performance by the plaintiff had been tendered and refused. As to the other three contracts, the time for performance had not arrived. The court held that the action might be maintained for the breach of the four contracts, and with reference to damages said: "As to the question of damages, if the action is not premature, the rule is applicable that plaintiff is entitled to compensation based, as far as possible, on the ascertainment of what he would have suffered by the continued breach of the other party down to the time of complete performance, less any abatement by reason of circumstances of which he ought reasonably to have availed himself."

(8) The defendant claimed that, after it had executed the agreements to assume the plaintiff's obligations upon the contracts with Innes, it intrusted such executed agreements to its agent Hoadley with explicit direction not to deliver them to the plaintiff until after Hoadley had secured options for the purchase of the rest of the California quicksilver production of 1916, which the defendant desired to obtain, and that in disregard of this instruction Hoadley delivered the agreements to the plaintiff before said condition was fulfilled. The justice instructed the jury that this defence was not tenable and that they need give that matter no consideration. The defendant excepted. In this instruction we do not find reversible error. What the defendant cites to us from the evidence as proof that this alleged direction of the defendant to Hoadley came to the plaintiff's knowledge before and at the time of the delivery of these executed agreements amounts to no more than a *scintilla* as opposed to the plaintiff's denial and the overwhelming preponderance furnished by the correspondence and the circumstances in the case. At the defendant's solicitation

and for its benefit the plaintiff had unconditionally placed itself under heavy liability to Innes, with the understanding that the defendant should assume such liability. The defendant's agent delivered to the plaintiff with the executed agreements a certified copy of a resolution of the defendant's board of directors. This resolution was as follows: "Resolved that the Chairman of the Board is hereby authorized and empowered to sign contracts with George W. McNear Incorporated, dated January 28th and February 9th 1916 and furnish said company with a certified copy of this resolution." The circumstances surrounding the transaction would justify the plaintiff in acting in reliance upon the terms of the agreements formally executed by the responsible officers of the defendant corporation, sealed with its corporate seal and delivered by its apparently fully authorized agent. In the face of these circumstances we should not be warranted in setting the verdict aside solely because this question which the defendant raised was not submitted to the jury.

The defendant excepted to the refusal of said justice to submit certain questions to the jury for special findings. These questions are as follows: "1. Was Mr. Hoadley endeavoring in January and February 1916 to get control of a sufficient quantity of quicksilver to enable him to raise the price of quicksilver? 2. Was John A. McNear working with Joseph H. Hoadley to enable Mr. Hoadley or the defendant to get control of a sufficient amount of quicksilver to raise the price of quicksilver? 3. Was Mr. Hoadley endeavoring in January and February 1916 to get control of a sufficient quantity of quicksilver to enable him to artificially raise the price of quicksilver? 4. Was John A. McNear working with Joseph H. Hoadley to enable Mr. Hoadley or the defendant to get control of a sufficient quantity of quicksilver to enable him to artificially raise the price of quicksilver?" The defendant bases its right to have these questions submitted upon the following provision of Section 6, Chapter 291, General Laws 1909: "In

any case the court may and upon request of either party shall direct the jury to return a special verdict upon any issue submitted to the jury." This statutory provision relates to the submission for special finding of a question involving some material issue in a case and not to the submission of what is merely a controverted point in evidence. One of the material issues in this case, and as the case was tried almost the sole issue, was whether the plaintiff and defendant in the transaction, of which the agreements in suit were a part, had combined to obtain a monopoly of quicksilver with the unlawful intent of selling the same at an unreasonably high price. A request for a special finding upon a question which should embody that issue would be within the terms of the statute. In refusing to submit the question presented by the defendant said justice intimated his willingness to submit a question which should call for a finding upon the material issue which we have stated. It is true, as the defendant points out, that said justice in his charge instructed the jury that the "plaintiff is bound by the acts, purposes, intent and knowledge of John A. McNear who was acting for it, and the defendant is bound by the acts, purposes, intent and knowledge of Joseph H. Hoadley who was acting for it." This instruction is a reasonable interpretation of the evidence. It was not excepted to by either party and must be taken as the law of the case. The defendant claims that in the light of that instruction the questions presented by it for submission to the jury do as a whole fairly present the material issue to which we have referred. The justice properly required that the questions submitted should plainly call for a finding as to whether the plaintiff and defendant acting through their respective agents were working together in furtherance of a common unlawful design. That was all for which the defendant could properly ask under the statute. If however there should be conceded to the defendant the interpretation which it now places upon the language of these questions, the defendant has not been prejudiced by

the refusal of the justice to submit them for special findings, for the issue which we have stated was the particular matter in controversy between the parties in the long trial before the jury. It formed the subject of a large part of the arguments of counsel. It was clearly and at length explained and submitted to the jury by said justice in his charge and they were instructed by him that the matter of the conspiracy "is the principal defence and to that you will devote your care ful consideration." The questions offered for submission must have been intentionally answered adversely to the defendant in the general verdict.

The defendant insists upon its exception to the action of said justice in charging the jury in accordance with the plaintiff's ninth, tenth, eleventh and twelfth requests to charge. These requests are as follows: "9. If the defendant relies upon a conspiracy it must show such conspiracy to have been between the McNear Company and the American and British Company. It is not sufficient to show that Hoadley alone may have been engaged in such enterprise to obtain or raise the price of quicksilver. 10. There is no evidence in the case that the defendant corporation authorized Hoadley to sell or dispose in any way of the quicksilver obtained under the contracts in suit. 11. The evidence is uncontradicted that Hoadley was not an officer, agent or employee of the defendant corporation and unless he was given authority by some action of the defendant his conduct in disposing of quicksilver would not be the conduct of the defendant. 12. Hoadley was not an officer or employee or agent of the American and British Company and that company cannot plead any unlawful acts of his as a defence to the action unless it proved that what he did or attempted to do in dealing with quicksilver purchased by the contracts of January 28th and February 9th was done by its authority (or that such acts were subsequently ratified)." These instructions in so far as they purport to set forth legal principles are correct statements of law. In their application to the facts of this case they should be

considered in connection with the explicit instructions of said justice contained in his general charge, *i. e.*, that a conspiracy may be proved by inferential and circumstantial evidence although there is an absence of positive evidence and that in the determination of the issue of conspiracy the jury should take into consideration the communications between the parties and all proper and legitimate inferences to be drawn from them, and also his instruction that in this transaction the plaintiff is bound by the acts, purposes, intent and knowledge of John A. McNear and the defendant by the acts, purposes and intent of Joseph H. Hoadley. In so far as these requests to charge state conclusions of fact from the evidence they are warranted. There was no evidence in the case of a special authorization from the defendant to Hoadley to sell any of the quicksilver obtained under the contracts in suit. It was uncontradicted that Hoadley was not an officer of the defendant and there is no positive evidence that he was an agent or employee of the defendant for the purpose of disposing of quicksilver although an inference of such agency or employment would not be unwarranted from the evidence and it is plain that Hoadley was the defendant's agent in arranging for the purchase of quicksilver in California. All acts looking toward the disposition of quicksilver by Hoadley or by the defendant took place in New York and in these neither the plaintiff or its agent took part nor is there any evidence that the plaintiff or its agent had knowledge of such acts, save as such knowledge might be inferred from the correspondence between the parties, which correspondence was placed before the jury. In line with what we have already said in this opinion, the conduct of Hoadley with reference to the disposition of quicksilver in New York is not material to the issue before the jury, whether such quicksilver was his own or was that which the defendant was to obtain under said contracts with Innes, and whether Hoadley's conduct in that regard was or was not authorized by the defendant. Such conduct tends to support the defendant's

claim as to its own and Hoadley's design in attempting to acquire a control of quicksilver, regarding which claims there is no dispute in the evidence, but it does not tend to support the defendant's claim of an illegal combination with the plaintiff in California in furtherance of such design.

(11)    There is no merit in the defendant's so-called exception to what it claims was the misconduct of plaintiff's counsel in his argument to the jury.  We have frequently had occasion to say that the office of a bill of exceptions under the statute is solely to bring before us for review rulings of the Superior Court to which exceptions have been duly taken.  Such bill of exceptions may not include other matters, as in this instance objections to the conduct of counsel.  If in any case a party considers that he has suffered prejudice through the conduct of a juryman, a witness or an opposing counsel or in respect to any other matter, arising in the travel of the cause, other than the action of the court itself, such party should first ask the court for some appropriate action on its part to relieve him from the effect of such harmful matter.  If the court fails to grant him the relief to which he considers himself entitled then by exception duly taken to the court's action he may bring the court's ruling before us for review.

All the defendant's exceptions are overruled.  The case is remitted to the Superior Court for the entry of judgment on the verdict.

*Charles F. Choate, Jr., Archibald MacLush, Frank T. Easton, Greenough, Easton & Cross,* for plaintiff.

*Waterman & Greenlaw,* for defendant.