Bettie **PETRARCA**

v.

**Francis CASTROVILLARI and Industrial National Bank Coexecutors of the Estate of the late Matthew W. Rossi.**

**No. 81–198–Appeal.**

Supreme Court of Rhode Island.

Aug. 11, 1982.

---

Alan H. Pearlman, Charles D. Wick, Providence, for plaintiff.

Carroll, Kelly & Murphy, Joseph A. Kelly, Providence, for defendants.

OPINION

SHEA, Justice.

This is a civil action on appeal by the plaintiff from a jury verdict in the Superior

Court. The litigation originated in the Cranston Probate Court where the plaintiff, Bettie Petrarca, contested the will of the late Matthew W. Rossi, M.D., dated February 22, 1977, on the grounds that the will was procured through undue influence and was executed by Dr. Rossi without the requisite mental capacity. The plaintiff had also maintained that she was the common-law wife of Dr. Rossi and was therefore entitled to a widow's share of the estate, or a life interest in his realty, despite the will. She contended that if the contested will was invalidated, a prior will leaving her the sum of $200,000 should be revived under the doctrine of dependent relative revocation.

On August 16, 1979, the Cranston Probate Court admitted Dr. Rossi's will to probate, overruling plaintiff's claims. She appealed to the Superior Court and a jury trial de novo was held on all issues. On October 16, 1980, the jury returned a verdict in favor of the proponents of the will, Francis Castrovillari and the Industrial National Bank as coexecutors of the estate. The jury's responses to specific interrogatories rejected the claim that Dr. Rossi and Ms. Petrarca had contracted a valid common-law marriage and also rejected the allegation that Dr. Rossi's will dated February 22, 1977, had been procured by the undue influence of his sister, Carolyn Mancini. Further, the jury found that Dr. Rossi was of "sane" mind when he executed the 1977 will and that all of the formalities required for the valid execution of the will were observed.

On appeal before us, plaintiff alleges that the trial justice committed reversible error by denying her motion for a new trial, by improperly instructing the jury in several instances, and by omitting certain requested instructions. We affirm the action of the Superior Court.

The facts, briefly stated, are as follows. The plaintiff became Dr. Rossi's patient about 1954. In fact, Dr. Rossi delivered her first child in 1960. At some point the relationship progressed beyond that of physician and patient. All during this relationship Dr. Rossi was already married to and continued to live with his wife until her death. Mrs. Rossi died on February 1, 1977. Ms. Petrarca, on the other hand, had lived "on and off" with Salvatore Petrarca in the late fifties and early sixties. She had two children by him. Although they never went through a formal wedding ceremony, there was evidence at trial that Salvatore and plaintiff had a common-law marriage. That question, however, was not specifically given to the jury for resolution. It is the basis of one of the alleged errors on appeal.

The relationship between Ms. Petrarca and Dr. Rossi continued until his death on February 3, 1979. The factual basis for plaintiff's claim that she was Dr. Rossi's common-law wife stems from an episode that she testified occurred in her home in 1973 at a time when Dr. Rossi's wife was living. She stated that Dr. Rossi bought her a wedding band and asked her if she would wear it. Her testimony regarding this incident is as follows:

> "Matthew bought the wedding band and brought it to the house and he asked me if I would wear it and I told him, yes, and he put the wedding band on my finger and he says 'well, now' he said 'this makes you my wife and I am now your husband.' and I says 'Fine.' and that was it. That was all there was to it."

The plaintiff further testified that she has worn the wedding band since 1973. This alleged common-law marriage was not witnessed and the "vows" expressed were not renewed after the death of Dr. Rossi's wife.

In regard to the claim that Dr. Rossi's February 22, 1977 will was procured through undue influence, plaintiff had contended at trial that Dr. Rossi's sister, Carolyn Mancini, exerted undue influence on her brother. This allegedly occurred at a time shortly after Mrs. Rossi's death when Dr. Rossi was described as being physically exhausted and upset. Also, he was staying temporarily at his sister's home. It was during this stay that Dr. Rossi executed the will that was ultimately admitted to probate which left nothing to plaintiff. This will replaced Dr. Rossi's previous will executed in 1976 before his wife's death which had bequeathed $200,000 to plaintiff.

The evidence largely relied upon by plaintiff to establish undue influence centered on an incident that happened after the execution of the will. In the spring of 1978, Dr. Rossi became upset after reading a copy of the will. He spoke by telephone to Attorney Francis Castrovillari, who had drafted the instrument. The conversation was overheard by plaintiff and Mary Alice Cragan, a neighbor. The plaintiff testified that Dr. Rossi complained vigorously about the will, stating that it was not his but was in fact his sister's. He complained that he did not know what was going on at the time the will was executed and that he wanted it changed. Dr. Rossi did not in fact change the will before his death in 1979, but plaintiff claims that this was because the attorney, was always too busy to see Dr. Rossi. Nevertheless, the jury found that the will was not procured by undue influence.

■ We turn now to the issues raised involving jury instructions. Evidence of a common-law marriage between Dr. Rossi and plaintiff was presented at trial. Therefore, the trial justice instructed the jury regarding the elements that must be proven.[1]

> "In summary, therefore, in order for contestant to prove a common-law marriage with testator after February 22, 1977,[2] she must prove to your satisfaction by clear and convincing evidence, three things: # 1, that she and testator mutually agreed and consented to be husband and wife after that date; # 2, that their declarations, acts and conduct were of such a character as to lead to a belief in the community, after that date, that they were in fact married, and # 3, that no legal impediment existed to such a marriage, that is to say, that contestant was not married by common law to Salvatore Petrarca." (Footnote added.)

The plaintiff contends that this instruction is flawed in four respects. Initially, plaintiff argues that she should not have been made to bear the burden of proof on the issue of whether there was a legal impediment to a common-law marriage with Dr. Rossi, that is, the question of her common-law marriage to Salvatore Petrarca. The plaintiff asserts that the question of a prior common-law marriage acting as a legal impediment to a subsequent common-law marriage is in the nature of an affirmative defense, making it incumbent upon the opponent to the marriage to bear the burden of proof.

■ This argument is without merit. We believe that the party seeking to prove the existence of a common-law marriage must at the very least present evidence that he or she had the capacity to enter into the marriage. This court has not had occasion to rule previously on this precise question. However, in *Ibello v. Sweet*, 47 R.I. 480, 133 A. 801 (1926), the court concluded that the party seeking to prove the existence of a common-law marriage has the burden of proof concerning whether the removal of an impediment to the marriage meant that a prior meretricious relationship changed into a valid common-law marriage relationship. It is entirely consistent with *Ibello* to require the party seeking to establish the common-law marriage to prove either that the removal of an impediment has effectuated a change in the relationship or that no impediment exists. We hold that in cases in which there is evidence of an impediment at trial, it then becomes incumbent upon the party seeking to prove the common-law marriage to show that no impediment existed at the time the purported common-law marriage came into being.

■ Next, plaintiff argues that it was error for the trial justice not to accompany the previously recited instruction with an additional instruction indicating that the

---

1. We note that Rhode Island has long recognizes the validity of common-law marriages. *Sardonis v. Sardonis*, 106 R.I. 469, 261 A.2d 22 (1970); *Holgate v. United Electric Railways Co.*, 47 R.I. 337, 133 A. 243 (1926).

2. The trial justice relied on the date that Dr. Rossi executed the will that is in dispute, since proof of a valid marriage, ceremonial or common law, revokes a prior will unless it appears from the will that it was made in contemplation of the marriage. General Laws 1956 (1969 Reenactment) § 33–5–9.

removal of the impediment to a common-law marriage between plaintiff and Dr. Rossi, i.e., the death of Mrs. Rossi, raises a presumption of an actual common-law marriage immediately after the removal of the obstacle. No such instruction was warranted under the facts of this case. In fact, the rule in *Ibello v. Sweet, supra*, creates the opposite presumption. As this court stated in *Ibello*:

> "The original relation between Raffaele and Jennie was illicit before the death of Raffaele's first wife. In the absence of clear proof to the contrary the presumption of law is that such meretricious relation continued." *Id.* at 482, 133 A. at 801–02. *See also Sardonis v. Sardonis*, 106 R.I. 469, 261 A.2d 22 (1970).

This was precisely the situation in the instant case because Dr. Rossi continued to live with his wife until her death, and his relationship with plaintiff during that time was illicit in nature. The plaintiff's reliance on *Holgate v. United Electric Railways Co.*, 47 R.I. 337, 133 A. 243 (1926), is misplaced. Although *Holgate* did conclude that "continued cohabitation raises a presumption of an actual marriage immediately after the removal of the obstacle," *id.* at 340, 133 A. at 244, it did so in the context of a relationship in which the parties lived together as man and wife prior to the removal of the impediment and continued in the same relationship after the removal of the obstacle. Here, plaintiff and Dr. Rossi did not cohabit in an apparent matrimonial union prior to Mrs. Rossi's death.

■ The third and fourth alleged errors in the instruction involve those elements of common-law marriage in which the parties' declarations, acts and conduct "lead to a belief in the community" that they were in fact married. The plaintiff contends that the use of the word "community" is misleading as it implies a more widespread knowledge of the parties' circumstances than is compatible with the reality of today's suburban society lifestyle. The plaintiff also argues that in defining "community," the trial justice did not include "kindred" in that definition, thus inhibiting plaintiff's ability to prove the existence of the marriage by causing the jury to disregard the testimony of plaintiff's sister.

It is clear that the jury was not misled by the use of the word "community." In further instructing the jury that a common-law marriage can be proven by circumstantial evidence, the justice indicated that the marriage can be shown by

> "how they held themselves out and how they held each other out to the community as a whole, the reputation of their relationship among kindred and friends and acquaintances and any other competent circumstantial evidence which tends to reasonably prove the fact in issue."

This instruction adequately covers plaintiff's objection to the alleged omission of "kindred" from the jury's consideration. Also, in another portion of the instruction the trial justice indicated that the "belief in the community" element was made in "reference to the neighbors and friends and acquaintances with whom the testator and the contestant associated in their daily lives." This instruction clearly eliminated the unlikely possibility that the jury would have been misled into thinking that the word "community" meant that plaintiff somehow had to show that persons not acquainted with Dr. Rossi and plaintiff would have had to have been aware of the alleged common-law marriage.

■ The plaintiff raises three additional questions involving alleged error on the part of the trial justice for failing to give requested instructions. First, it is argued that the trial justice should have submitted to the jury the question of whether Dr. Rossi was unduly influenced by his attorney, Francis Castrovillari. Next, plaintiff contends that the justice should have submitted the specific question of whether Bettie Petrarca and Salvatore Petrarca were married at common law; and finally, she claims it was error for the trial justice not to caution the jury after counsel for the proponents of the will raised the issue during final argument of Ms. Petrarca's alleged abortions.

Regarding the alleged undue influence of Attorney Castrovillari, such an instruction would have been warranted only in the event there was evidence that justified such a charge. *Fox v. Allstate Insurance Co.*, R.I., 425 A.2d 903 (1981); *Cinq-Mars v. Standard Cab Co.*, 103 R.I. 103, 235 A.2d 81 (1967). Where the evidence does not exist, the requested instruction is properly denied. *Hamrick v. Yellow Cab Co.*, 111 R.I. 515, 304 A.2d 666 (1973); *Morrarty v. Reali*, 100 R.I. 689, 219 A.2d 404 (1966).

The only relevant evidence offered in support of plaintiff's contention is the telephone conversation previously described between Dr. Rossi and Francis Castrovillari. In recalling this conversation, plaintiff herself testified that the attorney had told Dr. Rossi he could change the will anytime he wanted by Dr. Rossi's just coming into the office. We recognize the difficulty involved in proving undue influence since those exerting such influence will do so secretly. *Apollonio v. Kenyon*, 101 R.I. 578, 593–94, 225 A.2d 778, 787 (1967). However, even viewing this evidence in the light most favorable to plaintiff, there is insufficient competent evidence from which the jury could reasonably infer that undue influence had been exerted by the attorney. *See Marcinko v. D'Antuono*, 104 R.I. 172, 183, 243 A.2d 104, 110 (1968). The mere fact that Dr. Rossi may have been upset with Castrovillari at the time of the phone conversation does not support the inference of undue influence. The requested instruction was properly denied.

■ Next, we consider the trial justice's refusal to submit to the jury the requested interrogatory on the issue of whether plaintiff and Salvatore Petrarca were married at common law. The plaintiff contends that since the burden of proving that no impediment prevented a common-law marriage with Dr. Rossi was placed on her, as well as proving the other elements necessary to establish a common-law marriage, it was important to know on what ground the jury rejected her claim. We find that the trial justice properly exercised his discretion in submitting the interrogatories to the jury.[3] *See* Rule 49 of the Superior Court Rules of Civil Procedure. The key question was whether plaintiff and Dr. Rossi were married at common law. We have previously determined that the trial justice properly instructed the jury regarding the elements that plaintiff was required to prove by clear and convincing evidence. Obviously the jury concluded that plaintiff failed to prove one or more of the three elements. The additional interrogatory was not needed to resolve the issue fairly and only would have confused the jury.

■ During final argument, counsel for the proponents of the will commented on plaintiff's hospital records from Women and Infants Hospital as follows:

"There's a full exhibit, a hospital record from the Women and Infants Hospital, the history and the discharge says: the patient, Bettie Petrarca, is a twenty-six year old white female, four pregnancies, two children, two abortions. Now she said that the only one that she had anything to do with, prior to meeting Matthew Rossi, was Salvatore Petrarca. Was this a casual thing where he came in once every two weeks or once every month when she bore him two children and had two other pregnancies by him? Was it a casual thing when Salvatore Petrarca is named as the husband in those papers? Those are the hospital records."

This argument was presented to persuade the jury that Ms. Petrarca's relationship with Salvatore Petrarca was not a casual one, but instead was actually a marriage by common law. The defendants produced other evidence on this issue as well. This evidence was relevant to the issue of plaintiff's capacity to enter into a valid common-law marriage with Dr. Rossi since, if she had previously entered into a common-law

---

**3.** This court has indicated that it is not error to refuse to submit special issues to the jury when the question would necessarily be answered in a general verdict. *De Fusco v. Laudati*, 64 R.I. 68, 10 A.2d 346 (1940); *G. W. McNear, Inc. v. American & British Mfg. Co.*, 44 R.I. 190, 115 A. 709 (1922).

marriage with Salvatore Petrarca from which no divorce was obtained, this impediment would make impossible any subsequent marriage to Dr. Rossi, common law or otherwise.

The plaintiff contends that the trial justice should have cautioned the jury to eliminate any prejudice resulting from counsel's remarks. The attorney was making reference to information contained in a full exhibit that the jury would have before it for examination during deliberations. The exhibit and the contents of it were relevant and material to issues involved in the case. The attorney did not embellish or characterize the evidence in any way. It was not improper for him to refer to evidence in the record in his final argument. Furthermore, in view of the subject matter and the issues presented to the jury in this case, it is not likely that any particular prejudice resulted from these remarks. Although we recognize the sensitivity of the subject of abortion and the potential for prejudice, no prejudice has been shown here, and the trial justice did not commit error in not giving the requested cautionary instruction.

The final issue challenges the denial of the motion for a new trial. In denying this motion, the trial justice found that plaintiff "failed utterly" to prove that she and Dr. Rossi were married at common law following the death in February of 1977 of Dr. Rossi's wife. He recited the testimony regarding the private marriage "ceremony" that occurred in 1973 and concluded that since Dr. Rossi was married at the time, it

> "created a relationship that was nothing more than meretricious from that point on as it had been before. It continued to be an illicit relationship. Dr. Rossi did not live with Bettie Petrarca during that period, so there can be no presumption that carries over after the death of [Mrs.] Rossi, that they (Dr. Rossi and Bettie) intended to be married thereafter. Bettie Petrarca admitted that there was no ceremony, no exchange of mutual assent to be married after February 1977 when they commenced to live together after [Mrs.] Rossi's death."

The plaintiff disputes the finding of a lack of evidence regarding whether there was a reaffirmation of the marriage "vows" after Mrs. Rossi's death. As evidence of a reaffirmation, plaintiff points to a birthday card given to her by Dr. Rossi referring to her as his wife. The plaintiff also asserts that testimony presented by her sister, Judith Jersey, relating a conversation she had with Dr. Rossi, established that Dr. Rossi considered himself married to plaintiff. Also, plaintiff testified that they had held themselves out as husband and wife after Mrs. Rossi's death when they vacationed together.

It is well established that in considering a motion for a new trial, a trial justice must exercise independent judgment and consider all of the material evidence in the case in the light of the charge to the jury and to pass on its weight and the credibility of the witnesses. *Barbato v. Epstein*, 97 R.I. 191, 193, 196 A.2d 836, 837 (1964). We shall reverse a trial justice only when it is shown that he has overlooked or misconceived material evidence or was otherwise clearly wrong. *Pray v. Narragansett Improvement Co.*, R.I., 434 A.2d 923, 932 (1981).

In view of the evidence plaintiff relies on to establish that a reaffirmation occurred after Mrs. Rossi's death, we conclude that the trial justice properly denied the motion for a new trial. Since Ms. Petrarca herself admitted that after Mrs. Rossi's death she and Dr. Rossi did not renew their commitment in the form of another ceremony, the common-law marriage had to be proven by the conduct of the parties and their declarations and statements. In denying the motion on this point, the trial justice pointed to evidence presented by "a multitude of witnesses who testified that during this period the Doctor introduced Bettie Petrarca as his girlfriend, houseguest or housekeeper or simply as Bettie." He also referred to testimony given by friends and relatives of the deceased who stated that Dr. Rossi had expressed an intention not to remarry after Mrs. Rossi's death.

In regard to the testimony given by the plaintiff's sister, Judith Jersey, the trial justice concluded that the actual import of Dr. Rossi's statement to her was that they had been living together because they wanted to, not because they were legally required to. Further, the trial justice noted that when the plaintiff and Dr. Rossi traveled together, they signed into motels as husband and wife. He concluded that this was done for obvious reasons and he clearly placed little weight on this evidence. Finally, the justice found that evidence presented by witnesses for the plaintiff was not credible in many respects. The trial justice did not overlook or misconceive any material evidence. His denial of the motion for new trial was fully justified by his assessment of the evidence in the record.

For all of the foregoing reasons, the appeal is denied and dismissed, the judgment appealed from is affirmed, and the papers of the case are remanded to the Superior Court.