261 A.2d 22.

OPAL MARLENE SARDONIS *vs.* BARNUM LOUIS SARDONIS.

JANUARY 22, 1970.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

JOSLIN, J. The petitioner invokes the Reciprocal Enforcement of Support Act (G. L. 1956, chap. 11 of title 15) to obtain support for her two children both of whom are under the age of 18. A Family Court justice found that she and the respondent were validly married at common law

and that he was the father of her two children. The respondent was ordered to pay $40 a week for the children's support and he appealed. He argues initially that the Family Court lacked jurisdiction under the Act to decide questions relating either to the validity of the common-law marriage or to the parenthood of the children. Assuming jurisdiction, he contends alternatively that the facts do not establish a common-law marriage. We decide that the Family Court had jurisdiction, and that the trial justice did not err in finding a valid common-law marriage.

The jurisdictional argument poses no problem. Even a brief reference to the Act's pertinent provisions makes it obvious that proof of the existence of a marriage[1] and the fact of parenthood are indispensable conditions to the court's power to order support payments. Thus, the Act imposes upon parents possessed of sufficient means or able to earn such means the duty to provide a fair and reasonable sum for those children under the age of 18. The obligation is primarily that of the husband and the father (§15-11-5), and the mother becomes responsible only if the father is dead or cannot be found or is incapable of providing full support (§15-11-6). Jurisdiction is vested in the Family Court (§15-11-15, as amended by P. L. 1962, chap. 111, sec. 1), and the support obligation is enforceable even in those situations where both the person responsible for

---

[1]The marriage proved need not necessarily be valid. Only last term we held in *Bernier* v. *Bernier*, 101 R. I. 697. 701-02, 227 A.2d 112. 115,
"* * * that where at least one of the parties acted in good faith in contracting the marriage, 'the relationship resulting from a bigamous marriage constitutes a "marriage" within the meaning of a statute legitimating issue of all marriages null in law, and that the issue of such bigamous marriages are legitimate under the statute * * *'"
legitimating illegitimate children upon the subsequent marriage of their parents.

support and the one claiming it are to be found in this State.[2]

The respondent misconceives the true meaning of the term "jurisdiction" when he argues that the court lacks authority to decide questions relating to the validity of a marriage and parenthood of the children for whom support is sought. That term has been defined by this Court in the following manner:

> " 'The word "jurisdiction" (*jus dicere*) is a term of large and comprehensive import, and embraces every kind of judicial action upon the subject-matter * * *. To have jurisdiction is to have power to inquire into the fact, to apply the law, and to declare the punishment, in a regular course of judicial proceeding.' Shaw, C. J., in *Hopkins* v. *The Commonwealth,* 3 Met. 462. 'Jurisdiction in courts is the power and authority to declare the law. The very word in its origin imports as much. It is derived from *juris* and *dico.* I speak by the law. And that sentence ought to be inscribed in living light on every tribunal of criminal power. It is the right of administering justice through the laws by the means which the law has provided for that purpose.' *Mills* v. *The Commonwealth,* 13 Pa. St. 627, 630." *State* v. *Smith,* 29 R. I. 513, 521-22, 72 A. 710, 714.

Viewing "jurisdiction" in this sense it is axiomatic that the Court possessed it here. Obviously, prerequisites to any application and declaration of the law under the Act, viz., a support order, were findings that the parties were married and that respondent was the father of the children. That the marriage acquired its validity under common-law principles, rather than by compliance with the statutory provisions relative to the licensing and solemnization of marriages, is without significance. See *Alvernes* v. *Alvernes,* 75

---

[2]Section 15-11-17 reads: "When the obligor and the obligee are both found in this state, the procedure provided for in this chapter shall be followed so far as it may be applicable. and the court shall have both the duties and powers provided for it when acting as a court of either an initiating or responding state."

R. I. 325, 66 A.2d 373. So, too, is it without consequence that the Family Court may also have the power to decide the question of paternity in bastardy proceedings. In those proceedings its jurisdiction would be to determine who is the putative father of an illegitimate child, whereas in support cases under the Act what is important is not only who is the father, but also whether the child was born while he was married to the mother, or whether, even conceding that conception took place during an illicit relationship,[3] the child was subsequently legitimatized under the principles only recently enunciated in *Bernier* v. *Bernier, supra,* note 1.

Apart from the jurisdictional questions, respondent attacks the trial justice's finding that he and petitioner were validly married at common law. Such a marriage has long been recognized in this state. *Holgate* v. *United Electric Rys.,* 47 R. I. 337, 133 A. 243. It can be established by clear and convincing evidence that the parties seriously intended to enter into the husband-wife relationship, *Ibello* v. *Sweet,* 47 R. I. 480, 482, 133 A. 801, and that their conduct was of such a character as to lead to a belief in the community that they were married, *Williams* v. *Herrick,* 21 R. I. 401, 402, 43 A. 1036. That there are the prerequisite serious intent and belief is demonstrable by inference from cohabitation, declarations, reputation among kindred and friends, and other competent circumstantial evidence. *Holgate* v. *United Electric Rys.,* 47 R. I. at 340, 133 A. at 244; *Silva* v. *Merritt, Chapman & Scott Corp.,* 52 R. I. 30, 31-32, 156 A. 512, 513. These general principles are somewhat altered if the original relationship between the man and the woman is entered into when each is married to another person; in that circumstance, the law presumes that what was meretricious in its origins continues thus in the absence of

---

[3]In this case the fact appears to be that the older of the two children was born while an impediment to a valid marriage existed.

clear proof to the contrary. *Ibello* v. *Sweet*, 47 R. I. at 482, 133 A. at 801-02.

Here the parties first cohabited in 1963. He then had a wife and she a husband. Removal of the impediments to their marriage did not occur until petitioner's divorce became final about a month after she began to live with respondent, and when his divorce from his wife became final in 1964. In the interim, and until 1966, they lived together as husband and wife in Ohio, in Maryland, and finally in this state. She was addressed as Mrs. Marlene Sardonis, received mail in that name, and was known by it to her friends, as well as to the individuals from whom she and respondent rented space in trailer parks. During this period also the two children for whom she now seeks support were born. Their birth certificates give the children's names as Nicholas Louis Sardonis and Phillip Louis Sardonis. That the middle name of each of the children is Louis has significance since it is the custom of the country of respondent's origin to give male children not only their father's last name, but his middle name. It is clearly indicated, moreover, that respondent at the time the children were born told the hospital officials that he was their father and the husband of the petitioner, and that he acknowledged that he was petitioner's husband and the child's father when he supplied the vital statistics incident to the birth record of the second child.

Predicated on the foregoing facts which he accepted as credible, the trial justice concluded that the presumption of a meretricious relationship had been successfully rebutted and that the existence of a valid marriage contract had been established by clear and convincing evidence. The respondent has not satisfied us either that his legal conclusion was erroneous or that his factual determinations were clearly wrong, or that they were based upon a misconception or

474

oversight of material evidence. His decision must therefore stand.

The decree of the Family Court is affirmed, the respondent's appeal is denied, and the case is remitted to the Family Court for further proceedings.

*Friedman, Kramer & Kessler, Stephen A. Gordon, Pearlman & Pearlman, Thomas W. Pearlman,* for petitioner-appellee.

*Andrew A. Bucci,* for respondent-appellant.