CHARLES F. STANLEY & another[1] *vs.* WALCOTT R. AMES, JR., & others.[2]

Barnstable. March 7, 1979. — July 3, 1979.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, WILKINS, & ABRAMS, JJ.

*Negotiable Instruments,* Accommodation party.

Modification of the terms of one payment of a note did not release an accommodation maker from all liability to the holders of the note where the holders expressly reserved their rights against all parties to the original note. [367-368]

CIVIL ACTION commenced in the First District Court of Barnstable on July 25, 1975.

The case was heard by *Welsh*, J.

*Richard L. Curley* for the plaintiffs.

*Richard J. Cain* for Rebecca C. Ames.

ABRAMS, J. The sole question raised by the plaintiffs' appeal is whether modification of the terms of one payment of a note released an accommodation maker from

---

[1] Joan C. Stanley.

[2] Rebecca C. Ames, William E. Dacey, Jr., Florence M. Dacey.

all liability to the holders of the note. The District Court judge found that the accommodation maker was discharged. He entered judgment for the accommodation maker and reported the case to the Appellate Division of the District Court. The Appellate Division found no error in the finding that the accommodation maker was discharged, and the holders of the note appealed. We conclude that the accommodation maker was not discharged because, in agreeing to extend the time for payment, the holders expressly reserved their rights against all parties to the original note. Consequently, we reverse the judgment entered below.

We summarize the facts. On March 30, 1973, Walcott and Rebecca Ames and William and Florence Dacey executed a promissory note in the principal amount of $100,000 payable to Joan and Charles Stanley. The note was given as partial consideration for real estate purchased by Walcott Ames and William Dacey. The related purchase and sale agreement listed Walcott and William as the sole purchasers, but required that their spouses cosign the promissory note.

The promissory note called for four annual payments of principal in the amount of $25,000, with interest payable monthly in advance at a rate of 7% per annum. The first annual payment of $25,000 was made in 1974. On March 30, 1975, the second payment was not made. Instead, the Stanleys agreed to accept late payment by a written "Agreement and Note."

The Agreement and Note stated that in lieu of the $25,000 payment due on March 30, 1975, the Stanleys would accept five separate monthly payments of $5,000 each with interest at the rate of 9%. The Agreement and Note contained the following provision: "The Promisors agree that the Promisees' forbearance on the full payment due this date does not waive nor forbear any of the terms of the original Note, and that all rights set forth therein, and upon the Mortgage given for security therewith outstanding, are binding in all respects."

The Agreement and Note was executed by the Stanleys, the Daceys, and Walcott Ames. Rebecca Ames never signed or consented to this Agreement and Note. Her signature did appear on the document but the judge found that her signature was forged.[3]

Three of the monthly payments required under the Agreement and Note were made, thus reducing the outstanding principal on the original note to $60,000.[4] No further payments were made.

The judge found that Rebecca Ames was an accommodation maker[5] on the original note of March 30, 1973, and that the Stanleys were on notice of her status. See G. L. c. 106, §§ 3-415 (1), 3-415 (3).

Rebecca Ames contends, and the judge found, that she was discharged from liability on the original note of March 30, 1973, because the Stanleys agreed in the subsequent Agreement and Note to extend the time for payment. The Stanleys argue that the above quoted provision of the Agreement and Note expressly reserved their rights against all parties to the original note. We agree with the Stanleys' contention.[6]

---

[3] Rebecca Ames alleged in her amended answer that she had been living apart from Walcott Ames for several years. The judge made no finding of fact on that issue, and he made no determination concerning who had forged the signature. Rebecca Ames could not, of course, be held liable on a note bearing her forged signature. G. L. c. 106, §§ 3-401(1), 3-404(1).

[4] The District Court judge entered judgment for the Stanleys in the amount of $60,000 plus interest, costs, and attorney's fees against the Daceys and Walcott Ames, who have not appealed.

[5] An accommodation party "is one who signs the instrument in any capacity for the purpose of lending his name to another party to it." G. L. c. 106, § 3-415 (1), as appearing in St. 1957, c. 756, § 1.

[6] The Appellate Division held that there was insufficient evidence in the record to support a finding against the Stanleys in the amount of $14,500 on a counterclaim, and ordered the case remanded for further hearing. The judge subsequently reduced the judgment on the counterclaim to $500. The Stanleys allege no error concerning that counterclaim.

Under the Uniform Commercial Code, as enacted in
G. L. c. 106, § 3-606,[7] an accommodation maker of a note
is discharged from liability to the extent that the holder
of the note "without express reservation of rights" agrees
to suspend the right to enforce the instrument against
the party accommodated. See J. White, R. Summers, The
Law Under the Uniform Commercial Code 432-438
(1972). Cf. *Priggen Steel Bldgs. Co.* v. *Parsons,* 350 Mass.
62, 64 (1966). Thus, an accommodation party is generally
discharged from liability by a binding extension of time
given by a holder to a principal debtor without the con-
sent of the accommodation party.[8] The primary justifica-
tion for this rule is that the binding extension agreement
would bind the accommodation party who, on paying the
note, is subrogated to the holder's rights. J. Woodard,
Discharge of Sureties — Impairment of the Right of Re-
course, 9 B.C. Indus. & Com. L. Rev. 970, 971-972 (1968).
Clark, Suretyship in the Uniform Commercial Code, 46
Tex. L. Rev. 453, 457 (1968). J. White & R. Summers, The
Law Under the Uniform Commercial Code 432 (1972).
However, where the extension is accompanied by an ex-

---

[7] The relevant portion of § 3-606 provides: "(1) The holder discharges
any party to the instrument to the extent that without such party's
consent the holder

"(a) Without express reservation of rights releases or agrees not to
sue any person against whom the party has to the knowledge of the
holder a right of recourse or agrees to suspend the right to enforce
against such person the instrument or collateral or otherwise dis-
charges such person . . . .

. . . .

"(2) By express reservation of rights against a party with a right of
recourse the holder preserves

"(a) all his rights against such party as of the time when the instru-
ment was originally due; and

"(b) the right of the party to pay the instrument as of that time; and

"(c) all rights of such party to recourse against others."

[8] This common law rule was criticized by Judge Cardozo in The
Nature of the Judicial Process 152-154 (Yale U. Press 1925). Judge
Cardozo also suggested that "this branch of the law [be placed] upon
a basis more consistent with the realities of business experience and
the moralities of life." *Id.* at 155.

press reservation of rights, the surety is not prejudiced, because he can immediately pay the instrument and exercise his right of recourse against the principal debtor. J. White & R. Summers, *supra* at 437. 9 B.C. Indus. & Com. L. Rev., *supra* at 979.

In our view the provision in the Agreement and Note was an express reservation of rights by the Stanleys, and Rebecca Ames was free at all times to pay the original note and seek immediate recourse against the principal debtors. The provision clearly states an intent to retain all the rights in the original note.

Moreover, § 3-606 itself does not create any formal requirements for an effective reservation of rights.[9] The provision in the Agreement and Note gave fair notice of intent of the holder to retain rights in the original note,[10] and this in our view was adequate to prevent discharge of the accommodation makers. Moreover, Rebecca Ames could have paid the original note at any time, and would have been subrogated to all the holder's rights, including

[9] One authority, noting the lack of formal requirements, concludes that, "[s]ince the reservation must be expressed, something rather positive must be done. Clearly, a signed statement on the instrument, on a separate writing, or in a letter would suffice." 2 Bender's U.C.C. Service, Hart & Willier, Commercial Paper § 13.26 (1976). See *Parnes v. Celia's, Inc.*, 99 N.J. Super. 179, 183 (1968); *A.J. Armstrong, Inc. v. Janburt Embroidery Corp.*, 97 N.J. Super. 246, 259-260 (1967).

[10] Section 3-606 does not require actual notice to the accommodation party of the reservation of rights. *Parnes v. Celia's, Inc.*, 99 N.J. Super. 179, 183 (1968). J. White, R. Summers, The Law under the Uniform Commercial Code 437 (1972). A notice requirement was included in the 1952 version of the Code, but was deleted because it was a "novel departure" from prior law and was overly burdensome on the holder, and of little value to the accommodation party whose rights were adequately protected by the reservation, regardless of notice. ALI Nat'l Conference of Comm'rs on Uniform State Laws, 1956 Recommendations of the Editorial Board for the Uniform Commercial Code 129. 2 Report of the N.Y.L. Revision Comm'n for 1955, at 1189. 1 Report of the N.Y.L. Revision Comm'n for 1954, at 211.

the rights expressly reserved by the Stanleys in the Agreement and Note.[11]

We need not decide whether a surety who can prove prejudice by reason of an extension granted without his consent would be discharged. Here there is no showing that the extension increased the risk that the principal debtors would not pay the note. "The most satisfactory justification for permitting unconsented good faith modifications . . . is simply that they do not adversely affect the surety, and at least nine times out of ten he would consent anyway." White & Summers, *supra* at 437-438.

The judgment of the District Court is vacated, and the case is remanded to the District Court for further proceedings consistent with this opinion. See note 11, *supra*.

*So ordered.*

---

[11] Rebecca Ames argues on appeal that she was discharged from liability on the note because the Stanleys unjustifiably impaired collateral for the note by failing to "secure a mortgage on the real estate" which was the subject of the purchase and sale agreement. See G. L. c. 106, § 3-606 (1) (b). Cf. *Rose* v. *Homsey*, 347 Mass. 259, 260 (1964). However, this issue was not decided by the judge nor specifically included in his report to the Appellate Division. The record, therefore, is insufficient to enable us to reach or decide this issue.