MARGARET BUSHNELL *vs.* DANIEL BUSHNELL.

Barnstable. September 12, 1984. — December 11, 1984.

Present: WILKINS, LIACOS, NOLAN, LYNCH, & O'CONNOR, JJ.

*Uniform Reciprocal Enforcement of Support Act. Practice, Civil,* Appellate Division. *District Court,* Jurisdiction. *Jurisdiction,* District Court.

On appeal from an order of a District Court judge allowing the plaintiff's motion for relief from judgment in an action commenced under G. L. c. 273A, the Uniform Reciprocal Enforcement of Support Act, it was proper for the Appellate Division to reach the issue of the District Court's jurisdiction to determine the validity of the alleged marriage between the parties. [465-466]

In an action commenced in a District Court under G. L. c. 273A, the Uniform Reciprocal Enforcement of Support Act, the District Court had jurisdiction to determine the validity of the alleged marriage between the parties. [466-470]

The plaintiff in an action in a District Court under G. L. c. 273A, the Uniform Reciprocal Enforcement of Support Act, was entitled to notice of the defendant's motion for summary judgment under Dist. Mun. Cts. R. Civ. P. 56, and lack of notice to the plaintiff was a proper basis for allowing her motion for relief from judgment under rule 60 (b). [470-475]

An appeal from the order of a District Court judge vacating summary judgment entered for the defendant in an action under G. L. c. 273A, the Uniform Reciprocal Enforcement of Support Act, did not present the issue of the validity of the alleged marriage between the parties, and, therefore, the Appellate Division exceeded its authority by directing the District Court to enter judgment for the defendant based on invalidity of the marriage. [475-476]

CIVIL ACTION commenced in the First Barnstable Division of the District Court Department on September 9, 1981.

Motions for summary judgment and for relief from judgment were heard by *Richard O. Staff*, J.

*Alan A. Green (Mark D. Carchidi* with him) for the plaintiff.
*Gerald D. McLellan* for the defendant.

LYNCH, J. This is an action brought pursuant to G. L.
c. 273A, the Uniform Reciprocal Enforcement of Support Act.[1]
The plaintiff, a Pennsylvania resident, filed a petition for non-
support in the Commonwealth of Pennsylvania against the de-
fendant, a resident of Barnstable County. Pursuant to the act,
the petition was forwarded to the Barnstable Division of the
District Court, where summary judgment was entered for the
defendant after an ex parte hearing on the validity of the mar-
riage between the parties. Subsequently, the judge allowed the
plaintiff's motion for relief from judgment pursuant to Dist.
Mun. Cts. R. Civ. P. 60 (b) (1975), and stayed further proceed-
ings so that the defendant could bring an action in the Probate
Court or the Superior Court to determine the validity of the
marriage. The defendant appealed this ruling to the Appellate
Division, which decided that the District Court had jurisdiction
to determine the validity of the marriage. In addition, the
Appellate Division decided that the original judgment had been
erroneously vacated by the allowance of the plaintiff's motion
for relief from judgment, and therefore, implicitly, that the
stay of proceedings was improper. The Appellate Division then
remanded the case to the District Court and ordered the entry
of judgment dismissing the plaintiff's petition on the merits.

The plaintiff argues on appeal that the Appellate Division
exceeded its authority by deciding questions not properly re-
ported to it, and asks that the District Court's order vacating
the judgment be reinstated. We affirm that portion of the Ap-
pellate Division's order holding that the District Court has
jurisdiction to determine the validity of a marriage in an action
brought pursuant to G. L. c. 273A, and that the judge's order
to stay the proceedings was improper. We reverse that portion
of the order that reinstated the original judgment for the defend-

[1] Massachusetts has adopted some of the amendments to the 1950 uniform
act, St. 1954, c. 556, § 1, along with numerous amendments particular to
Massachusetts. However, the Commonwealth has not joined thirty-two other
States in adopting the 1968 revised act. See Uniform Reciprocal Enforcement
of Support Act, Commissioners' Prefatory Note, 9A U.L.A. (Master ed.
1979 & Supp. 1984).

ant. We therefore remand the case to the District Court for further proceedings to determine whether the marriage was valid, and, if so, the amount of support, if any, to which the plaintiff is entitled.

We summarize the relevant facts. The defendant and one Isabelle Bushnell were married in 1938, and subsequently they became Massachusetts domiciliaries. On May 29, 1981, a complaint for divorce between the defendant and Isabelle Bushnell was entered in the Probate and Family Court for Barnstable County, and a separation agreement between the parties was approved pursuant to G. L. c. 208, § 1A. On June 3, 1981, the defendant and the plaintiff flew to Santo Domingo in the Dominican Republic, where the defendant received a divorce from Isabelle Bushnell and married the plaintiff on the same day. After residing in Pennsylvania with the plaintiff for a short time, the defendant returned to reside in Massachusetts with Isabelle Bushnell. On September 25, 1981, the divorce complaint between the defendant and Isabelle Bushnell was dismissed at their request.

The plaintiff filed a complaint for nonsupport in the Court of Common Pleas of Chester County, Pennsylvania, on September 9, 1981. The complaint was forwarded to the Barnstable Division of the District Court pursuant to 42 Pa. Cons. Stat. Ann. § 6754 (Purdon 1982),[2] where the defendant entered a special appearance and filed a motion to dismiss and a motion for summary judgment. After an ex parte hearing on these motions, the judge granted the defendant's motion for summary judgment, holding that no marriage existed between the parties.

After the appeal period had run,[3] the plaintiff appeared in the District Court seeking relief from the judgment under rule 60

---

[2] This provision is similar to G. L. c. 273A, § 8. General Laws c. 273A, § 9, lists the duties of the District Court acting as the responding State's court.

[3] The plaintiff had ten days to appeal the judge's rulings under Dist. Mun. Cts. R. Civ. P. 64 (c) (1) (i) (1975). Under that rule, the ten-day period commences on the date judgment is entered. See Locke v. Slater, 387 Mass. 682, 685 (1982). The plaintiff alleges that notice of the judgment was not received by the initiating Pennsylvania court until the appeal period had elapsed.

(b). The judge granted this motion, and, because he believed the District Court lacked jurisdiction to determine the validity of the marriage, he stayed proceedings so that the parties could adjudicate this issue in the Probate Court or the Superior Court. The Appellate Division set aside the judge's rulings and ordered the initial judgment to be reinstated.

1. *Subject matter jurisdiction.* The plaintiff contends that the Appellate Division exceeded its proper scope of review by deciding that the District Court had subject matter jurisdiction to determine whether the marriage between the parties was valid. The plaintiff argues that the Appellate Division should have considered only whether the judge had abused his discretion by granting the plaintiff's motion for relief from judgment. We conclude that the plaintiff construes the reported issue too narrowly.

It is clear from the judge's findings that his basis for staying the proceedings was his belief that the District Court lacked subject matter jurisdiction to determine the validity of a marriage in a proceeding commenced under G. L. c. 273A.[4] The Appellate Division is required to consider questions of law reported to it, *James J. Derba, Inc.* v. *Hamilton Serv., Inc.*, 355 Mass. 127, 130 (1969), and has the duty to consider legal questions necessarily attendant to those reported. See *Henry L. Sawyer Co.* v. *Boyajian*, 303 Mass. 311, 312 (1939). In the circumstances of this case, the Appellate Division could not have properly reviewed the judge's ruling without deciding

---

[4] The judge stated his reasons for vacating the initial judgment for the defendant as follows: "M.G.L. c. 273A was created to provide an effective and relatively simple procedure to compel support payments where a duty of support exists, and jurisdiction to determine existence of that duty was indeed conferred upon the District Courts. However, no additional jurisdiction was conferred which would specifically allow the District Court, in making that determination, to inquire into and rule on subject matter which is clearly within the jurisdiction of the Probate Court; jurisdiction over matters relating to the validity of marriages is expressly awarded to the Probate or Superior Court under the provisions of M.G.L. c. 207, § 14. Although this issue is necessarily related to the issue of a duty of support, it is one which logically should be independently predetermined in a court having proper jurisdiction, prior to any further proceedings in this court regarding support."

whether the judge was correct in concluding that he lacked jurisdiction to consider the marriage's validity. The issue reported to the Appellate Division was precisely this question of jurisdiction, and the Appellate Division properly reached this issue.

Having determined that the issue of jurisdiction was properly before the Appellate Division, we next address the plaintiff's argument that the Appellate Division erred in deciding that the District Court had the requisite subject matter jurisdiction to decide whether the marriage of the parties was valid. This contention is anchored on G. L. c. 207, § 14, governing actions concerning marriage and divorce, and on G. L. c. 208, § 6, which places jurisdiction of such actions in the Superior and Probate Courts.[5] The Appellate Division rejected this argument, holding that, although the District Court does not have general jurisdiction to determine the validity of marriages and divorces, it does have jurisdiction over those matters incidental to its jurisdiction under G. L. c. 273A, § 6.[6] We agree with the Appellate Division that the District Court does have jurisdiction over such matters.

In G. L. c. 273A, § 10, the District Court is given the authority to order support if "the court finds a duty of support" imposed by law. Our duty is to interpret these words according to the intent of the Legislature. *Commonwealth* v. *Graham*, 388 Mass. 115, 119 (1983). *Board of Educ.* v. *Assessor of Worcester*, 368 Mass. 511, 513 (1975). For a District Court

---

[5] General Laws c. 207, § 14, as amended by St. 1976, c. 486, § 19, provides in applicable part: "If the validity of a marriage is doubted, either party may institute an action for annulling such marriage, or if it is denied or doubted by either party, the other party may institute an action for affirming the marriage. Such action shall be commenced in the same manner as an action for divorce, and all the provisions of chapter two hundred and eight relative to actions for divorce shall, so far as appropriate, apply to actions under this section."

General Laws c. 208, § 6, as amended by St. 1977, c. 183, provides: "Actions for divorce shall be filed, heard and determined in the superior court or probate court . . . ."

[6] General Laws c. 273A, § 6, as amended through St. 1965, c. 17, § 1, states in part: "Any proceeding hereunder shall be commenced in a district court . . . ."

judge to determine, in accordance with the statute, whether a duty of support exists, it must be determined whether there is a basis for that support, that is, whether a valid marriage exists between the parties. The relation between these two determinations is illustrated by this court's language in *French* v. *McAnarney,* 290 Mass. 544 (1935): "The moment the marriage relation comes into existence, certain rights and duties necessarily incident to that relation spring into being. One of these duties is the obligation imposed by law upon the husband to support his wife." *Id.* at 546.[7] Since the duty of support arises out of the existence of a valid marriage, we hold that the District Court has the implied power to determine that fact in cases brought under G. L. c. 273A.[8]

This conclusion is buttressed by our decision in *Police Comm'r of Boston* v. *Municipal Court of the Dorchester Dist.,* 374 Mass. 640 (1978). In that case, we held that the Juvenile Court has the implied power to expunge police records as an ancillary part of its jurisdiction over juvenile issues. *Id.* at 665-668. We held that "in the appropriate circumstances, courts may consider and decide matters 'ancillary or incidental to, or growing out of, the main action' which, as original causes of action, would not be within the jurisdiction of the court." *Id.* at 665 n.18, quoting *Morrow* v. *District of Columbia,* 417 F.2d 728, 737-738 (D.C. Cir. 1969). The concept of implied or ancillary jurisdiction is not a new one in this Commonwealth. In *Wade* v. *Lobdell,* 4 Cush. 510, 512 (1849), this court held that the Probate Court could decide questions incidental to a subject over which it had jurisdiction, even if it lacked independent jurisdiction over the incidental matter.[9] See *Common-*

---

[7] Under the statute currently in effect, the court may enter a judgment for either party to pay alimony to the other. G. L. c. 208, § 34.

[8] We note our prior admonition that this statute is not to be narrowly construed, and that every effort should be made to render it operable. *M———— v. W————,* 352 Mass. 704, 707 (1967). The fact that the plaintiff might have sought relief in the Probate Court is irrelevant. *Canty* v. *Canty,* 392 Mass. 1004, 1005 (1984).

[9] The plaintiff argues that *Nevins* v. *Tinker,* 384 Mass. 702, 705-706 (1981) stands for the opposite proposition. Our reading of that decision, however, shows that we did not reach the jurisdictional question in that case.

*wealth* v. *New York Cent. & H.R. R.R.,* 206 Mass. 417, 429 (1910) ("a grant of jurisdiction carries with it by implication power to use the necessary means to exercise and enforce that jurisdiction").

Our decision today is also consistent with our prior interpretations of G. L. c. 273A. In *M———— v. W————,* 352 Mass. 704, 706 (1967), the defendant asserted that the District Court did not have jurisdiction to determine paternity in an action commenced under G. L. c. 273A. Rejecting that contention, we held that the District Court must have jurisdiction to determine paternity "as a basis of finding a 'duty of support.'" *Id.* at 711.[10] The great majority of State courts faced with the paternity question have also resolved it in this manner.[11]

---

[10] One reason for finding that "[n]o practical considerations preclude" the District Courts from determining paternity was that those courts were already empowered to do so under G. L. c. 273, § 15, relating to quasi criminal nonsupport prosecutions. *M———— v. W————, supra* at 710 & n.8. We note that the District Court is apparently given a similar power to determine the existence of a marriage under G. L. c. 273. General Laws c. 273, § 1, as appearing in St. 1977, c. 848, § 2, provides: "Any spouse . . . who without just cause deserts his spouse . . . and any spouse . . . who unreasonably neglects or refuses to provide for the support and maintenance of his spouse . . . shall be punished . . . ." Section 7 provides for evidentiary rules to be followed in determining "the fact of their marriage."

A principal drafter of the uniform act believes that the act confers no jurisdiction to determine paternity (and presumably marriage) on a court that does not already have independent jurisdiction over such actions. W.J. Brockelbank & F. Infausto, Interstate Enforcement of Family Support 62 (2d ed. 1971). We have already held otherwise in *M———— v. W————, supra* at 711, through our interpretation of G. L. c. 273A, § 10. In advising that courts which do have independent jurisdiction should decide questions of paternity, Professor Brockelbank observes that otherwise, "defendants would begin interposing such a defense as a subterfuge merely to avoid their obligations." W.J. Brockelbank & F. Infausto, *supra.* We believe this policy extends equally to the situation considered in *M———— v. W————, supra,* and the case now before us.

[11] Section 27 of the 1968 revised act specifically allows the adjudication of paternity. 9A U.L.A. (Master ed. 1979). This is consistent with the judicial interpretations made in the great majority of States that had not adopted § 27 of the 1968 revised act at the time their courts were faced with this issue. See *People ex rel. Johnson* v. *Johnson,* 35 Ill. App. 2d 106 (1962) (by implication); *D.L.M.* v. *V.E.M.,* 438 N.E.2d 1023, 1028 (Ind. Ct. App. 1982); *Stearns* v. *Kean,* 303 N.W.2d 408, 412

Furthermore, our holding comports with the Legislature's directive in G. L. c. 273A, § 17, to construe this statute to make it "substantially uniform" with the laws of other States. Addressing the same issue we decide today, the Supreme Court of Rhode Island has held that questions relating to the validity of a marriage may be litigated in an action brought pursuant to the Uniform Reciprocal Enforcement of Support Act. *Sardonis* v. *Sardonis,* 106 R.I. 469 (1970). That court noted: "Even a brief reference to the Act's pertinent provisions makes it obvious that proof of the existence of a marriage . . . [is] indispensable . . . to the court's power to order support payments." *Id.* at 470.[12] See *Weller* v. *Weller,* 14 Ariz. App. 42, 45-46 (1971) (court has power to inquire into validity of Mexican divorce decree). See also *People ex rel. Valle* v. *Valle,* 113 Ill. App. 3d 682, 683, 685-686 (1983); *Amaker* v. *Amaker,* 28 N.C. App. 558, 561 (1976). Cf. *Blois* v. *Blois,* 138 So. 2d 373, 374 (Fla. Dist. Ct. App. 1962) (evidence of dissolution of a marriage is relevant in determining duty of support); *O'Neill*

---

(Iowa 1981); *Wahl* v. *Walsh,* 180 Kan. 313, 314-317 (1956) (by implication); *Department of Economic Sec.* v. *Shanklin,* 514 S.W.2d 682, 685 (Ky. 1974); *Carpenter* v. *Carpenter,* 231 La. 638, 646-647 (1956) (by implication); *Lambrou* v. *Berna,* 154 Me. 352, 361-362 (1959); *Curry* v. *Felix,* 276 Minn. 125, 132 (1967); *Iowa ex rel. Nauman* v. *Troutman,* 623 S.W.2d 269, 271 (Mo. Ct. App. 1981); *Amaker* v. *Amaker,* 28 N.C. App. 558, 561-562 (1976); *Clarkston* v. *Bridge,* 273 Or. 68, 73 (1975); *Commonwealth ex rel. Franz* v. *Zaengle,* 53 Pa. D. & C. 2d 382, 384 (1971); *Sardonis* v. *Sardonis,* 106 R.I. 469, 470-472 (1970); *Brown* v. *Thomas,* 221 Tenn. 319, 323 (1968); *Saunders* v. *Saunders,* 650 S.W.2d 534, 538 (Tex. Civ. App. 1983) (by implication); *Nickle* v. *Guarascio,* 28 Utah 2d 425 (1972) (by implication); *Yetter* v. *Commeau,* 84 Wash. 2d 155, 160-163 (1974). See also *Aikens* v. *Turner,* 241 Ga. 401, 403-404 (1978) (§ 27 applied to case commenced before adoption of that section).

Two States held that paternity could *not* be adjudicated. See *Nye* v. *District Court for the County of Adams,* 168 Colo. 272, 274-275 (1969); *Smith* v. *Smith,* 11 Ohio Misc. 25 (1965). The Legislatures have since adopted § 27, effectively overruling these decisions. See Colo. Rev. Stat. § 14-5-128 (1974 & Cum. Supp. 1983); Ohio Rev. Code Ann. § 3111.06 (Baldwin 1982). See also Op. Att'y Gen. No. 2025, at 91 (S.C. 1966) (paternity may not be adjudicated).

[12] Although Rhode Island has now adopted the 1968 revision of the act, it was not in effect at the time of the *Sardonis* decision. See *Sardonis* v. *Sardonis,* 106 R.I. 469, 469 (1970).

v. *O'Neill,* 420 So. 2d 261, 264 (Ala. Civ. App.) (evidence of cohabitation as ground for termination of alimony germane to the question of the duty of support), aff'd, 420 So. 2d 264 (Ala. 1982).

2. *Stay of proceedings.* Once the Appellate Division correctly decided that the District Court had jurisdiction, it was implicit that the judge had improperly stayed proceedings in the District Court.[13]

3. *Notice.* However, we cannot completely affirm the order of the Appellate Division. The defendant moved for summary judgment pursuant to Dist. Mun. Cts. R. Civ. P. 56.[14] Rule 56 (c) specifically requires that "[t]he motion shall be served at least 10 days before the time fixed for the hearing." The defendant admittedly failed to serve notice on the plaintiff,[15] claiming that, because G. L. c. 273A governs the proceeding and has no special provisions for notice, no notice at all was required. We disagree, concluding that, because of the defendant's failure to serve notice of his motion on the plaintiff, the judge was clearly warranted in vacating the initial judgment, if not required to do so.[16]

General Laws c. 273A was designed "to provide an effective procedure to compel performance by one under a duty to support defendants in another State." *Phillips* v. *Phillips,* 336 Mass.

---

[13] The judge ruled that: "Further proceedings in this case are stayed for a period of 60 days to enable the respondent to petition a court having jurisdiction to determine the validity of respondent's Dominican Republic divorce and subsequent marriage of the respondent to the petitioner."

[14] Mass. R. Civ. P. 56, 365 Mass. 824 (1974), governs this procedure in the District Courts.

[15] In his report to the Appellate Division, the judge duly noted: "The Motion for Summary Judgment was filed with the Court but not served on the Plaintiff, her counsel or the forwarding Pennsylvania court."

[16] In *Pittston Co.* v. *Reeves,* 263 F.2d 328, 329 (7th Cir. 1959), the court held that where a class action was voluntarily dismissed without notice to all class members as required by Fed. R. Civ. P. 23(c), the Federal District Court had no discretion in vacating judgment, but that an intervener could have the judgment set aside as a matter of right. See *Sonus Corp.* v. *Matsushita Elec. Indus. Co.,* 61 F.R.D. 644, 647-649 (D. Mass. 1974) (failure to give any notice of application for default judgment raises due process questions).

561, 562-563 (1958). The uniform act was developed in response to the problems posed for the interstate enforcement of support by the increased mobility of the American population. The drafters of that act observed that "[a] deserting husband was beyond the reach of process in the state where he had abandoned his family and the family had no means to follow him." Commissioners' Prefatory Note (1950 Act), 9A U.L.A. (Master ed. 1979). See generally Note, The Uniform Enforcement of Support Act in Massachusetts, 33 B.U.L. Rev. 217 (1953). In the majority of cases brought under the act, no question is raised concerning the obligation of a respondent to provide support; the court in the responding State merely determines the amount of support to which the petitioner is reasonably entitled and acts to ensure that the support payments are, in fact, made. See W.J. Brockelbank & F. Infausto, Interstate Enforcement of Family Support 51 (2d ed. 1971). In these cases, the petitioner, often destitute, rarely appears in the responding State's court. *M———— v. W————*, 352 Mass. 704, 710 (1967). *Lambrou* v. *Berna,* 154 Me. 352, 361 (1959). W.J. Brockelbank & F. Infausto, *supra* at 42.

In the present case, however, the defendant has raised a defense sufficient, if proved, to require the plaintiff's petition to be dismissed on the merits.[17] In such a case, this court's observation in *M———— v. W————*, *supra*, has great

---

[17] We take notice of § 21 of the 1950 uniform act, as amended in 1958, but not adopted in this State: "If the [complainant] is absent from the responding state and the [respondent] presents evidence which constitutes a defense, the court shall continue the case for further hearing and the submission of evidence by both parties." 9A U.L.A. (Master ed. 1979).

Similarly, § 20 of the 1968 revised act provides: "If the obligee is not present at the hearing and the obligor denies owing the duty of support alleged in the petition or offers evidence constituting a defense the court, upon request of either party, continue [*sic*] the hearing to permit evidence relative to the duty to be adduced by either party by deposition or by appearing in person before the court. The court may designate the judge of the initiating court as a person before whom a deposition may be taken." *Id.* at 700.

We have already held in *M———— v. W————*, *supra* at 710 n.10, that the District Court may stay the proceeding to allow the plaintiff to appear, and in this case, that the plaintiff is entitled to the notice provided for in rule 56. Thus, while our procedure is somewhat different from that quoted above, it serves the same purpose — to avoid an ex parte determination of the case on the merits when possible. Cf. *Cohen* v. *Industrial Bank & Trust Co.,* 274 Mass. 498, 503 (1931) (removal of default judgment).

relevance. There, we noted that when the basis of the duty of support is contested, "the issues are such that the presence of [both] parties before the trier of fact may be of great importance." *Id.* at 710-711. Although both parties were before the District Court in that case, we noted that if both parties were not present, the District Court had the inherent discretionary power to stay the proceeding in order to allow the plaintiff to appear. *Id.* at 710 n.10. We now hold that, when a defendant files a motion for summary judgment, the plaintiff is entitled to the notice required by rule 56 (c), even if the motion judge does not exercise his discretion to stay the proceeding.[18]

The defendant similarly argues that since the judge has discretionary power to appoint counsel for the plaintiff under G. L. c. 273A, § 15,[19] but did not do so, the plaintiff cannot now assert her lack of notice. The simple answer to this contention is that the failure of the judge to exercise his discretion under § 15 does not absolve the defendant of his duties under rule 56 (c).

Although G. L. c. 273A itself contains no notice provisions, we cannot believe that by enacting that law to assist dependents in receiving support, the Legislature intended to isolate the proceedings from the procedural safeguards that would otherwise apply. Indeed, if we were to accept that argument, we essentially would be providing "a procedural field day for defaulting [spouses]," a result we forcefully rejected in *Kirby* v. *Kirby*, 338 Mass. 263, 268 (1959). Instead, we choose to follow a path more consonant with the Legislature's purpose in enacting this statute — that the act does not displace the rules

---

[18] In this case, we are presented only with the question whether a plaintiff is entitled to the notice required by rule 56 when the defendant makes a motion for summary judgment under that rule. We do not mean to imply, however, that notice to the plaintiff in proceedings brought under G. L. c. 273A is limited to such motions. In different circumstances not now before us, a different notice requirement may be appropriate.

[19] In applicable part, G. L. c. 273A, § 15, as amended through St. 1965, c. 20, § 1, provides: "If the petitioner is without counsel and it appears to the court that there is need for counsel to represent the petitioner, the court may on its own motion appoint counsel to represent the petitioner."

of civil procedure.[20] See *Davis* v. *Davis,* 103 N.J. Super. 284, 289-290 (1968). See also *Yetter* v. *Commeau,* 84 Wash. 2d 155, 163 (1974).[21] This is obviously what the drafters of the uniform act intended when they stated that "[p]rovisions covering other details of procedure have been kept out of the Act so that the usual rules for obtaining jurisdiction for carrying on the procedure and for appeals may be held to govern." Commissioners' Prefatory Note (1950 Act), 9A U.L.A. (Master ed. 1979).[22]

4. *Rule 60 (b) practice.* The judge, because of his jurisdictional ruling, did not find it necessary to pass on any of the other grounds asserted by the plaintiff for relief under rule 60 (b).[23] Generally, the judge should have the opportunity to exercise his discretion in determining whether any of those additional grounds constitute a sufficient reason to vacate the original judgment. After the judge has done so, his rulings could be reviewed by the Appellate Division and set aside if the judge

---

[20] For a different analysis reaching a consistent conclusion, see *Watkins* v. *Springsteen,* 102 Mich. App. 451, 460-461 (1980). In a proceeding commenced under the uniform act, the defendant asserted a violation of visitation privileges by the plaintiff as vitiating his duty of support. The court held that the defense could be asserted only because of the court's independent jurisdiction over custody, support, and visitation, which required notice to the plaintiff. While declining to engraft procedural safeguards onto the uniform act, the court noted that without notice and an opportunity to be heard, the plaintiff's due process rights would be violated.

[21] The State of Washington has adopted § 21 (see note 17, *supra*) and § 20 of the 1950 version of the uniform act, neither of which have been enacted in Massachusetts. Section 20, an optional provision of the 1950 uniform act, states: "The court shall conduct proceedings under this act in the manner prescribed by law for an action for enforcement of the type of duty of support claimed." This optional provision was designed for those States that may wish to use a more informal type of procedure in these cases. See W.J. Brockelbank & F. Infausto, *supra* at 59. We do not believe that by not adopting these sections the Legislature meant to eliminate procedural safeguards provided by law.

[22] See Note, Uniform Reciprocal Enforcement of Support Act, 17 U. Pitt. L. Rev. 261, 268 (1956); Briggs, The Reciprocal Enforcement of Support Act in Montana, 15 Mont. L. Rev. 40, 46-51 (1954).

[23] Mass. R. Civ. P. 60, 365 Mass. 828 (1974), governs this procedure in the District Court.

committed an abuse of discretion. *Parrell* v. *Keenan,* 389 Mass. 809, 815 (1983). *Trustees of the Stigmatine Fathers, Inc.* v. *Secretary of Admin. & Fin.,* 369 Mass. 562, 565-566 (1976). However, this appeal brings before us not only the rulings of law reported to the Appellate Division, but also all questions of law touching the action of the Appellate Division. *James J. Derba, Inc.* v. *Hamilton Serv., Inc.,* 355 Mass. 127, 130 (1969). It was found that the plaintiff was not given notice of the defendant's motion for summary judgment. Thus, it is clear that the judgment should be vacated for a reason different from those set forth by the judge, but nevertheless argued by the parties, and we see no reason to remand the case for a consideration of other rule 60 (b) grounds.[24]

Rule 60 (b) (1) allows relief from a judgment on grounds of "mistake, inadvertence, surprise, or excusable neglect." Entry of judgment based on the failure of the plaintiff to be given notice of the defendant's motion for summary judgment appears to fall within this subsection. See *Blois* v. *Friday,* 612 F.2d 938 (5th Cir. 1980) (rule applicable where attorney fails to file change of address, leading to lack of notice and default judgment).[25] Moreover, this court has held that, in some circumstances, lack of notice "constitutes a sufficiently fundamental flaw" to make it "any other reason justifying relief from the operation of the judgment," within the meaning of rule 60 (b) (6). *Chavoor* v. *Lewis,* 383 Mass. 801, 806 (1981).[26] We

---

[24] Lack of notice would constitute a ground sufficient to set aside a judgment on appeal. See *Boston Morris Plan Co.* v. *Barrett,* 272 Mass. 487, 491 (1930) (failure to give notice of demand to admit facts). When, as here, the same ground is asserted in cases where the lack of notice has prevented an appeal, we see no reason why the same argument would not prevail against a challenge for abuse of discretion when the judgment is vacated below.

[25] Motions made under rule 60 (b) (1)-(5) must be made within a reasonable time, not to exceed one year. Here, the plaintiff's motion was made approximately two months after the initial judgment was entered. The judge would be within the bounds of his discretion in considering this to be a reasonable time in the circumstances of this case. Rule 60 (b) is substantially the same as Fed. R. Civ. P. 60(b). See *Chavoor* v. *Lewis,* 383 Mass. 801, 804 n.1 (1981).

[26] In *Chavoor,* the plaintiff's motion was made after one year had passed, and hence subsection (1) was no longer available to him. Motions made under

find it unnecessary to decide the exact subsection under which the plaintiff's motion would be most appropriate,[27] except to state that it surely falls within one of the grounds she asserts. We conclude that lack of notice is a proper basis for relief under rule 60 (b).

5. *Validity of the marriage.* We now address the plaintiff's contention that the Appellate Division exceeded its authority by ruling on the validity of the marriage when that issue was not reported to it. We agree that the Appellate Division did erroneously exceed its proper scope of review.

The Appellate Division was presented only with the question whether the judge improperly allowed the plaintiff's motion for relief from judgment and stayed the proceedings in the District Court. As we stated earlier, the Appellate Division generally has only the power to decide questions properly reported to it. See *James J. Derba, Inc.* v. *Hamilton Serv., Inc., supra*; *Elliott* v. *Warwick Stores, Inc.*, 329 Mass. 406, 409 (1952); *Himelfarb* v. *Novadel Agene Corp.*, 305 Mass. 446, 448-449 (1940). While Dist. Mun. Cts. R. Civ. P. 64 (i) (1975) gives the Appellate Division the authority to reverse, vacate, or modify rulings, or to order a new trial, that power is given only when there has been prejudicial error *in the rulings complained of*.

Although reversal of the judge's order to vacate would thereby reinstate the original judgment, the question whether the factual findings in the original judgment were correct is a

subsection (6) need not be made within a year, but only within a reasonable time. We have already noted that the judge could have found that the present motion was timely. See note 25, *supra*.

Rule 60 (b) (6) gives the court power to vacate a judgment "whenever such action is appropriate to accomplish justice." Reporters' Notes to Mass. R. Civ. P. 60, Mass. Ann. Laws., Rules of Civil Procedure at 587 (Law. Co-op. 1982). The plaintiff also grounded her motion on rule 60 (b) (3), for "fraud . . . misrepresentation, or other misconduct of an adverse party." Since the motion was proper under either subsection (1) or (6), we need not address the issue whether it could also have been maintained on this basis.

[27] See 11 C.A. Wright & A.R. Miller, Federal Practice and Procedure § 2864, at 212 (1973): "[When] the motion is made within a year of judgment . . . it is not important to decide whether the motion in fact comes under clause (6) or under one of the earlier clauses."

matter separate from, and independent of, the issues presented to the Appellate Division. See *Loanes* v. *Gast,* 216 Mass. 197, 199 (1913). The plaintiff had not appealed from that judgment, and the defendant, even had he been so inclined, could not have sought review of it, since he was not aggrieved by the ruling. Dist. Mun. Cts. R. Civ. P. 64 (c) (2). G. L. c. 231, § 108. See *Circle Lounge & Grille, Inc.* v. *Board of Appeal of Boston,* 324 Mass. 427, 429-433 (1949); *Commercial Credit Corp.* v. *Flowers,* 282 Mass. 316, 321 (1933); *Cobb* v. *Chickatawbut Club,* 220 Mass. 146, 148 (1915).[28]

We conclude that the Appellate Division erred in setting aside the judge's order vacating the initial judgment, and exceeded its authority by directing the District Court to enter judgment for the defendant based on the invalidity of the marriage. Since the Appellate Division was correct in holding that the District Court had jurisdiction and that the judge had improperly stayed proceedings, we remand the case to the District Court. After considering the submissions of both parties, the judge may then determine whether the original entry of summary judgment for the defendant was appropriate. Therefore, the order of the Appellate Division is affirmed in part, and reversed in part, and the case is remanded to the District Court for further proceedings consistent with this opinion.

*So ordered.*

---

[28] Since we find that the Appellate Division exceeded its power of review by considering the validity of the marriage, we find it unnecessary to discuss the plaintiff's contention that the Appellate Division's ruling on this issue was unsupported by factual findings in the record. For the same reason, we need not address the defendant's contention that the Appellate Division acted properly under G. L. c. 231, § 110. See *Stanley* v. *Ames,* 378 Mass. 364, 369 n.11 (1979); *Henry L. Sawyer Co.* v. *Boyajian,* 303 Mass. 311, 313 (1939).